LUIS A. CARRILLO, ESQ. SBN 70398
MICHAEL S. CARRILLO, ESQ. SBN 258878
MARIA F. GARCIA BALDIZZONE, ESQ. SBN 367907
**CARRILLO LAW FIRM, LLP**
1499 Huntington Dr., Suite 402
South Pasadena, CA. 91030
Tel.: (626) 799-9375
Fax: (626) 799-9380

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong (SBN 281819)
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

R.T. and A.T., in each case a minor by and through their guardian *ad litem*, Emma Morales, individually and as successors in interest to Luis Torres, deceased; and EMMA MORALES, individually,

Plaintiffs,

vs.

CITY OF RICHMOND; BRANDON HODGES; DOES 1-10, inclusive; and nominal defendant CANDELARIA RIVERA FELIX

Defendants.

Case No.

**COMPLAINT FOR DAMAGES**

1. Fourth Amendment – Excessive Force (42 U.S.C. § 1983)
2. Fourth Amendment – Denial of Medical Care (42 U.S.C. § 1983)
3. Substantive Due Process, Interference with Familial Relationships (U.S.C. §1983)
4. Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)Municipal Liability – Unconstitutional Custom or Policy (42 U.S.C. § 1983/ Monell)
5. Municipal Liability – Failure to Train (42 U.S.C. § 1983)
6. Supervisor Liability – 42 U.S.C. § 1983
7. Negligence (Wrongful Death)
8. Battery (Wrongful Death)
9. Violation of Bane Act (Cal. Civil Code § 52.1)

**DEMAND FOR JURY TRIAL**

## COMPLAINT FOR DAMAGES

Plaintiffs, R.T. and A.T., minors, by and through their guardian *ad litem* Emma Morales, in each case individually and as a successor-in-interest to LUIS TORRES; and EMMA MORALES (collectively, "Plaintiffs"), for their complaint against Defendants CITY OF RICHMOND ("CITY"), BRANDON HODGES ("HODGES"), and DOES 1-10, inclusive, (collectively "Defendants") hereby allege as follows:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.

2. This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in the Northern District of California, and all incidents, events, and occurrences giving rise to this action occurred in the Northern District.

4. Before filing this action, Plaintiffs timely presented a government claim to Defendant CITY OF RICHMOND on April 10, 2026, as required for Plaintiffs state-law claims for money or damages. The CITY rejected the claim on May 28, 2026.

## INTRODUCTION

5. This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating rights secured by the United States Constitution and California law in connection with the fatal officer-involved shooting

of LUIS ANGEL TORRES RIVERA ("DECEDENT" and/or "LUIS TORRES") on January 22, 2026, on Interstate 80 in Contra Costa County, California.

6. On the morning of January 22, 2026, DECEDENT, a 30-year-old father of two, was shot and killed by Defendant BRANDON HODGES, a detective employed by the Richmond Police Department. DECEDENT was struck by gunfire multiple times, including twice in the torso and once in the right leg, and died of his wounds. At the time he was shot, DECEDENT was not armed with a firearm and did not pose an immediate threat of death or serious bodily injury to Defendant HODGES or to any other person that would justify the use of deadly force.

7. Plaintiffs allege that the death of DECEDENT was the result of the excessive and unreasonable use of deadly force by Defendant HODGES, the failure to provide or summon timely and reasonable medical care to DECEDENT after he was shot, and Defendants' deliberate indifference to DECEDENT's constitutional rights, including their failure to employ de-escalation techniques and readily available less-lethal alternatives.

8. The policies, customs, and practices behind the shooting of civilians such as DECEDENT, and the failure to de-escalate the encounter and to employ less-lethal options, are unconstitutional and have violated the civil rights of residents within the jurisdiction of the CITY OF RICHMOND, including DECEDENT. Accordingly, Plaintiffs seek by means of this action to hold accountable those responsible for the death of DECEDENT, and to challenge the unconstitutional policies and practices of the CITY OF RICHMOND.

## PARTIES

9. At all relevant times, LUIS TORRES ("DECEDENT") was an individual residing in the City of Vacaville, State of California.

10. Plaintiff R.T. is an individual residing in the County of Solano and is the natural/biological daughter of DECEDENT. R.T. sues in her individual capacity as the daughter of DECEDENT and in a representative capacity as a successor-in-interest to

DECEDENT pursuant to California Code of Civil Procedure § 377.60. R.T. seeks both survival and wrongful death damages under federal and state law. Plaintiff is the nine-year-old daughter of DECEDENT and, to protect her privacy as a minor, is identified herein by the pseudonym R.T.

11. Plaintiff A.T. is an individual residing in the County of Solano and is the natural/biological daughter of DECEDENT. A.T. sues in her individual capacity as the daughter of DECEDENT and in a representative capacity as a successor-in-interest to DECEDENT pursuant to California Code of Civil Procedure § 377.60. A.T. seeks both survival and wrongful death damages under federal and state law. Plaintiff is the six-year-old daughter of DECEDENT and, to protect her privacy as a minor, is identified herein by the pseudonym A.T.

12. Plaintiff EMMA MORALES is an individual residing in the County of Solano and is the life partner of DECEDENT and the biological mother of DECEDENT's two minor children, Plaintiffs R.T. and A.T. Plaintiff EMMA MORALES sues in her individual capacity as the life partner of DECEDENT.

13. At all relevant times, Defendant CITY OF RICHMOND ("CITY") was and is a duly organized public entity existing under the laws of the State of California, with the capacity to be sued. CITY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Richmond Police Department and its officers, agents, and employees. At all relevant times, CITY was responsible for ensuring that the actions, omissions, policies, procedures, practices, and customs of the Richmond Police Department and its officers, agents, and employees complied with the laws of the United States and the State of California. At all relevant times, CITY was the employer of Defendant HODGES and DOES 1–10.

14. Defendant BRANDON HODGES ("HODGES") was at all relevant times a detective employed by the Richmond Police Department. Plaintiffs are informed and believe, and thereon allege, that HODGES was off duty at the time of the shooting but

acted, and purported to act, under color of state law and in his capacity as a police officer, including by exercising, invoking, and asserting the authority, powers, and duties of a Richmond Police Department peace officer during his encounter with DECEDENT.

15. Defendants DOES 1–5 are peace officers employed by CITY's Richmond Police Department ("DOE OFFICERS"). At all relevant times, DOE OFFICERS were acting under color of law within the course and scope of their duties as officers for the Richmond Police Department, and were acting with the complete authority and ratification of their principal, Defendant CITY.

16. Defendants DOES 6–10 are managerial, supervisorial, and policy-making employees of CITY's Richmond Police Department who were acting under color of law within the course and scope of their employment at the time of this incident ("DOE SUPERVISORS"). At all relevant times, DOE SUPERVISORS were acting with the complete authority and ratification of their principal, Defendant CITY.

17. On information and belief, Defendants DOES 1-10 were residents of the City of Richmond.

18. In doing the acts and failing and omitting to act as hereinafter described, Defendant HODGES was acting on the implied and actual permission and consent of Defendants CITY and DOES 1-10.

19. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1–10, inclusive, are unknown to Plaintiffs, who therefore sue these Defendants by such fictitious names. Plaintiffs will seek leave to amend this Complaint to allege the true names and capacities of these Defendants when they have been ascertained. Each fictitiously named Defendant is responsible in some manner for the conduct and liabilities alleged herein.

20. At all times mentioned herein, each and every Defendant, including DOES 1–10, was the agent of each and every other Defendant, and in doing the acts and omissions alleged herein, was acting within the course and scope of that agency

and with the actual or implied permission, consent, authorization, and ratification of each other Defendant.

21. Defendants HODGES and DOES 1-10 are sued in their individual capacities.

22. Nominal Defendant CANDELARIA RIVERA FELIX was DECEDENT's alleged mother. She has been named as a nominal defendant in this case because she is one of DECEDENT's wrongful death heirs if it is determined that she was DECEDENT's mother. Plaintiffs join CANDELARIA RIVERA FELIX to this action under California Code of Civil Procedure section 382 as a Nominal Defendant. Plaintiffs are informed, and based thereon allege that Nominal Defendant CANDELARIA RIVERA FELIX resides in Mexico.

## FACTUAL ALLEGATIONS

23. Plaintiffs repeat and re-allege each and every allegation in the prior paragraphs of this Complaint with the same force and effect as if fully set forth herein.

24. On or about January 22, 2026, at approximately 7:20 a.m., DECEDENT was traveling in his vehicle, reported to be a gold Nissan Altima, on westbound Interstate 80 near Pinole Valley Road in Contra Costa County, California. Another vehicle collided with DECEDENT's vehicle, causing it to become disabled and stop in the far-left lane (the No. 1 lane) of westbound Interstate 80.

25. Following the collision, DECEDENT remained stopped in or near his disabled vehicle in the far-left lane of the freeway. Plaintiffs are informed and believe, and thereon allege, that DECEDENT was experiencing a mental-health and/or medical crisis and was in obvious need of assistance, rather than deadly force, at the time of the encounter.

26. Defendant HODGES, a Richmond Police Department detective, arrived at the scene in a Richmond Police Department vehicle with its emergency lights activated.

27. Although HODGES may have been off duty at the time, he confronted and attempted to detain DECEDENT while acting under color of state law and under color of his authority as a peace officer. When HODGES fired the shots, he was acting in his official capacity, and he was using his CITY police training on the use of force, detentions, and arrests. When HODGES shot DECEDENT, he exercised power possessed by virtue of state law and made possible only because HODGES was clothed with the authority of state law. HODGES was employed by the state and abused the position given to him by the state; thus, he acted under color of state law. Further, HODGES' actions were performed while HODGES was acting, purporting to act, or pretending to act in the performance of his official duties as a police officer for the CITY. When HODGES shot DECEDENT, he was engaged in work that the CITY employed him to perform. Further, HODGES' conduct was incident to his duties as a police officer and was performed for the benefit of the CITY as opposed to serving his own purposes or convenience. Additionally, HODGES' pretense of acting in the performance of his official duties, including announcing himself as a police officer, had the purpose and effect of influencing the behavior of DECEDENT and other motorists. On information and belief, the gun and ammunition HODGES used to shoot DECEDENT was issued by the CITY.

28. Within a very short period of time, and without adequately assessing the situation, Defendant HODGES discharged his firearm at DECEDENT multiple times. DECEDENT sustained at least three gunshot wounds, including two to the left side of his chest and one to the medial aspect of his right thigh, which fractured his femur. The physical evidence is consistent with the shots having been fired from a distance, rather than at close or contact range.

29. At the time Defendant HODGES used deadly force against DECEDENT, DECEDENT was not armed with a firearm and posed no immediate threat of death or serious bodily injury to Defendant HODGES or any other person. The use of deadly force was excessive and unreasonable under the totality of the circumstances, and less-

lethal options and de-escalation techniques were readily available.

30. Defendant HODGES did not give DECEDENT any meaningful commands before shooting him, despite it being feasible to do so, and did not verbally warn DECEDENT that deadly force would be used, despite it being feasible to provide such a warning.

31. Defendant HODGES failed to properly and adequately assess the need to use force, including deadly force, against DECEDENT; failed to employ reasonable de-escalation tactics; failed to give DECEDENT sufficient time and space to respond to any lawful commands; failed to develop or employ a sound tactical plan; and failed to communicate with DECEDENT in a manner reasonably designed to resolve the encounter without the use of deadly force.

32. DECEDENT did not pose an immediate threat of death or serious bodily injury to anyone at the time Defendant HODGES shot him. At no time before Defendant HODGES discharged his firearm did DECEDENT present an imminent threat of death or serious physical injury that could not have been addressed through readily available less-lethal means or strategies. The force used against DECEDENT was unnecessary, excessive, and objectively unreasonable under the totality of the circumstances.

33. After Defendant HODGES shot DECEDENT, DOE OFFICERS arrived at the scene and observed that DECEDENT was bleeding and suffering from obvious, life-threatening injuries. Despite DECEDENT's urgent need for medical attention, Defendant HODGES and DOE OFFICERS failed to promptly and reasonably render or summon necessary medical aid, made no reasonable attempt to assist DECEDENT, and/or delayed or interfered with the provision of timely medical care.

34. DECEDENT was subsequently transported by ambulance to Alameda Health System, Highland Hospital in Oakland, California, where, despite life-saving measures, he was pronounced dead at approximately 9:35 a.m. on January 22, 2026.

35. The shooting and death of DECEDENT are the subject of an investigation

by the California Department of Justice.

36. As a direct and proximate result of Defendants' conduct, DECEDENT suffered extreme physical and emotional pain and suffering before his death, lost his life, and lost his future earning capacity. Plaintiffs have suffered the loss of DECEDENT's love, companionship, comfort, care, assistance, protection, affection, society, moral support, and financial support; will continue to suffer such losses for the remainder of their natural lives; and have incurred funeral and burial expenses.

37. On or about April 10, 2026, Plaintiffs filed comprehensive and timely claims for damages with the CITY pursuant to applicable sections of the California Government Code.

38. On or about May 28, 2026, Plaintiffs' claim for damages pursuant to Government Code § 913 and § 915.4 was rejected by the CITY. Plaintiff has therefore exhausted all administrative remedies.

## FIRST CLAIM FOR RELIEF

**Fourth Amendment - Excessive Force (42 U.S.C. § 1983)**

**(By Plaintiffs R.T. and A.T. against Defendants HODGES and DOE OFFICERS)**

39. Plaintiffs reallege and incorporate by reference each preceding paragraph of this Complaint as though fully set forth herein.

40. The Fourth Amendment to the United States Constitution, and applied to state actors by the Fourteenth Amendment, provides citizens the right to be secure in their person against unreasonable searches and seizures, including the use of excessive deadly force.

41. At all relevant times, HODGES was acting under color of state law. When HODGES shot DECEDENT, he exercised power possessed by virtue of state law and made possible only because HODGES was clothed with the authority of state law. HODGES was employed by the state and abused the position given to him by the state;

thus, he acted under color of state law. Further, HODGES' actions were performed while HODGES was acting, purporting to act, or pretending to act in the performance of his official duties as a police officer for the CITY.

42. The unreasonable and excessive use of force by Defendant HODGES deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution and applied to state actors through the Fourteenth Amendment.

43. Defendant HODGES used deadly force against DECEDENT when DECEDENT was not armed with a firearm and did not pose an immediate threat of death or serious bodily injury to the officers or to any other person, and when less-lethal alternatives were readily available. This use of deadly force was objectively unreasonable under the totality of the circumstances.

44. As a direct and proximate result of the conduct of Defendant HODGES, DECEDENT suffered extreme pre-death pain and suffering and the loss of his life.

45. Defendant HODGES is liable for DECEDENT's injuries and death, either because he was integral participants in the use of excessive force or because they failed to intervene to prevent the violation of DECEDENT's constitutional rights.

46. The conduct of Defendant HODGES was willful, wanton, malicious, oppressive, and done with reckless and callous disregard for the rights and safety of DECEDENT, and therefore warrants the imposition of exemplary and punitive damages as to HODGES and DOE OFFICERS.

47. As a result of their excessive use of deadly force, HODGES is liable for DECEDENT's injuries and Plaintiffs' damages. Plaintiffs R.T. and A.T. bring this claim as successors-in-interest to Decedent and seek survival damages for the violation of DECEDENT's rights, including recovery of DECEDENT's pre-death pain and suffering, loss of enjoyment of life, lost earning capacity, and loss of life.

48. Plaintiffs also seek attorneys' fees pursuant to 42 U.S.C. § 1988(b) under this claim.

## SECOND CLAIM FOR RELIEF

**Fourteenth Amendment – Denial and Delay of Medical Care (42 U.S.C. § 1983)**

**(By Plaintiffs R.T. and A.T, against Defendants HODGES and DOE OFFICERS)**

49. Plaintiffs reallege and incorporate by reference each preceding paragraph of this Complaint as though fully set forth herein.

50. The denial of medical care by Defendants HODGES and DOE OFFICERS deprived Decedent of his right to be secure in his person against unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution and applied to state actors through the Fourteenth Amendment.

51. At all relevant times, HODGES was acting under color of state law. When HODGES shot DECEDENT, he exercised power possessed by virtue of state law and made possible only because HODGES was clothed with the authority of state law. HODGES was employed by the state and abused the position given to him by the state; thus, he acted under color of state law. Further, HODGES' actions were performed while HODGES was acting, purporting to act, or pretending to act in the performance of his official duties as a police officer for the CITY.

52. After Defendant HODGES shot DECEDENT, DOE OFFICERS arrived at the scene and observed that DECEDENT was bleeding profusely, had sustained obvious and life-threatening injuries, and required immediate medical attention. Despite DECEDENT's obvious and serious medical needs, Defendants HODGES and DOE OFFICERS made no reasonable attempt to provide or timely summon medical assistance for DECEDENT.

53. Defendants HODGES and DOE OFFICERS knew, or reasonably should have known, that failing to provide or timely summon medical treatment could result in further significant injury, death, or the unnecessary and wanton infliction of pain.

Nevertheless, they disregarded DECEDENT's serious medical needs and delayed and/or interfered with the provision of timely medical care.

54. Defendants HODGES and DOE OFFICERS further failed to permit responding medical personnel at the scene to timely render necessary medical aid and assistance to DECEDENT, thereby causing or contributing to DECEDENT's injuries, pain, suffering, and death.

55. As a direct and proximate result of Defendants' conduct, DECEDENT suffered extreme mental and physical pain and ultimately lost his life and earning capacity.

56. The conduct of Defendants HODGES and DOE OFFICERS was willful, wanton, malicious, oppressive, and undertaken with reckless and callous disregard for DECEDENT's constitutional rights and safety, thereby warranting the imposition of exemplary and punitive damages against HODGES and DOE OFFICERS.

57. As a result of their misconduct, HODGES and DOE OFFICERS are liable for DECEDENT's injuries, either because they were integral participants in the denial of medical care, or because they failed to intervene to prevent these violations. HODGES and DOE OFFICERS under 42 U.S.C. § 1983, are liable to Plaintiffs for compensatory, including general and special, damages.

58. Plaintiffs bring this claim as DECEDENT's successors in interest and seek survival damages arising from the violation of DECEDENT's constitutional rights, including pre-death pain and suffering and loss of life.

59. Plaintiffs also seek reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

//

## THIRD CLAIM FOR RELIEF

**Fourteenth Amendment – Substantive and Procedural Due Process – Interference with Familial Relations (42 U.S.C. § 1983)**

**(By All Plaintiffs against Defendants HODGES and DOE OFFICERS)**

60. Plaintiffs reallege and incorporate by reference each preceding paragraph of this Complaint as though fully set forth herein.

61. R.T. had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in Plaintiff's familial relationship with her father, DECEDENT.

62. A.T. had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in Plaintiff's familial relationship with her father, DECEDENT.

63. DECEDENT was involved in the day-to-day child rearing of A.T and R.T. DECEDENT maintained a close, loving, consistent parent-child relationship with A.T. and R.T.

64. Plaintiff EMMA MORALES had a cognizable liberty interest under the Due Process Clause of the Fourteenth Amendment to the United States Constitution to be free from state action that deprived her of life, liberty, or property in a manner that shocks the conscience, including, but not limited to, unwarranted state interference with her familial relationship with her life partner, DECEDENT. DECEDENT was the love of EMMA MORALES's life. EMMA MORALES moved and built her life around her relationship with DECEDENT so that they could be together. EMMA MORALES and DECEDENT were together for approximately ten years and shared a

home as life partners. They built a close-knit and loving family together. EMMA MORALES and DECEDENT welcomed two children into the world, whom they loved and raised together. DECEDENT took care of the family and handled the household bills and financial obligations, which were maintained in his name. EMMA MORALES and DECEDENT shared their daily lives, household responsibilities, finances, and the care and upbringing of their children. DECEDENT played a central and irreplaceable role in EMMA MORALES' life and in the lives of their two children.

65. As a result of the excessive force by Defendant HODGES, DECEDENT died. Plaintiffs were thereby deprived of their constitutional right of familial relationship with DECEDENT.

66. Defendants HODGES and DOE OFFICERS, acting under color of state law, thus violated the Fourteenth Amendment rights of Plaintiffs to be free from unwarranted inferference with their familial relationship with DECEDENT.

67. Plaintiffs have a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiffs familial relationship with DECEDENT.

68. The aforementioned actions of HODGES, along with the undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of the DECEDENT and Plaintiffs with purpose to harm unrelated to any legitimate law enforcement objective.

69. Defendant HODGES, acting under color of state law, thus violated the Fourteenth Amendment rights of DECEDENT and Plaintiffs.

70. As a direct and proximate cause of the actions of HODGES, Plaintiffs suffered extreme and severe mental anguish and pain and have been injured in mind and body. Plaintiffs have also been deprived of the life-long love, companishionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to

be so deprived for the remainder of their natural lives. Plaintiffs also seek funeral and burial expenses and loss of financial support.

71. As a result of the conduct of HODGES and DOE OFFICERS, HODGES and DOE OFFICERS are liable for DECEDENT's injuries because they were integral participants in the denial of due process.

72. The conduct of HODGES and DOE OFFICERS was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to Defendants HODGES and DOE OFFICERS.

73. Plaintiffs bring this claim individually and seek wrongful death damages under this claim for for the interference with Plaintiffs' familial relationship with DECEDENT. Plaintiffs also seek attorney's fees under this claim.

**FOURTH CLAIM FOR RELIEF**

**Municipal Liability – Unconstitutional Custom or Policy (42 U.S.C. § 1983/ Monell)**

**(By Plaintiffs R.T. and A.T. against Defendants CITY and DOE SUPERVISORS)**

74. Plaintiffs reallege and incorporate by reference each preceding paragraph of this Complaint as though fully set forth herein.

75. On information and belief, the CITY and DOE SUPERVISORS maintained a custom or policy of permitting officers to use deadly force against individuals who did not pose an imminent threat of death or serious bodily injury. This custom or policy was a moving force behind HODGES' shooting of DECEDENT. The CITY's and DOE SUPERVISORS' subsequent formal determination that the shooting was "within policy," despite DECEDENT's lack of an imminent threat to HODGES at the time of the shooting, is further evidence of that preexisting unconstitutional custom or policy and the CITY's deliberate indifference to the constitutional rights of

individuals its officers encounter.

76. Defendant CITY and DOE SUPERVISORS ratified, acquiesced, and condoned the shooting of DECEDENT by HODGES.

77. On information and belief, HODGES, was not disciplined, and was not given additional training, after the shooting of DECEDENT, which evidences ratification and acquiescence in the shooting of DECEDENT by HODGES.

78. On and for some time prior to January 22, 2026, and continuing to the present, Defendant CITY and DOE SUPERVISORS deprived DECEDENT of the rights and liberties secured to him by the Fourth and Fourteenth Amendments to the United States Constitution, in that they acted with deliberate indifference to the rights and liberties of the public, including DECEDENT, by knowingly maintaining, enforcing, and applying official recognized customs, policies, and practices of:

a. Employing and retaining as peace officers, including Defendant HODGES, an individual whom Defendants CITY and DOE SUPERVISORS knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force;
b. Inadequately supervising, training, controlling, assigning, and disciplining Richmond Police Department officers and other personnel;
c. Maintaining inadequate procedures for reporting, supervising, investigating, reviewing, and disciplining the use of excessive force, including deadly force;
d. Failing to adequately discipline officers for, and to objectively investigate, prior incidents of excessive and deadly force;
e. Ratifying the use of excessive and deadly force by failing to meaningfully investigate and by exonerating officers for such conduct; and
f. Failing to identify and address the conduct of officers who engage in the excessive use of force.

79. The unconstitutional customs, policies, and practices of Defendant CITY

and DOE SUPERVISORS was a moving force and/or affirmative link behind the violation of DECEDENT's constitutional rights and his resulting injuries and death.

80. Other systemic deficiencies, policies, customs, and practices which indicated, and continue to indicate, a deliberate indifference to the violations of the civil rights by the CITY police officers, such as HODGES, that Defendants CITY and DOE SUPERVISORS were aware of, and has condoned and ratified include:

a. Preparation of investigative reports designed to vindicate the use of excessive use of force, regardless of whether such force was justified;
b. Preparation of investigative reports which uncritically rely solely on the word of police officers involved in the assault, battery, excessive use of force incidents and which systematically fail to credit testimony by non-police witnesses;
c. Preparation of investigative reports which omit factual information and physical evidence which contradicts the accounts of the officers involved;
d. Issuance of public statements exonerating officers involved in such incidents prior to the completion of investigations of the excessive use of force;
e. Failure to objectively and independently review investigative reports by responsible superior officers for accuracy or completeness and acceptance of conclusions which are unwarranted by the evidence of the wrongful shooting, assault, excessive use of deadly force, or which contradict such evidence.

81. Defendants CITY and DOE SUPERVISORS had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of DECEDENT,

and other individuals similarly situated.

82. By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, Defendants CITY and DOE SUPERVISORS, acted with an intentional, reckless, and callous disregard for the rights for the life of DECEDENT, and DECEDENT's and Plaintiffs' constitutional rights. Defendant CITY actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

83. Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by Defendants CITY and DOE SUPERVISORS was affirmatively linked to and was a significantly influential force behind the injuries of DECEDENT and Plaintiffs.

84. By reason of the aforementioned acts and omissions of Defendant CITY and DOE SUPERVISORS, Plaintiffs were caused to incur funeral and related burial expenses, and loss of financial support, and Plaintiffs have suffered loss of love, companionship, affection, comfort, care, society, and future support.

85. Accordingly, Defendants CITY and DOE SUPERVISORS are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983

86. Plaintiffs R.T. and A.T. bring this claim both individually and as successors-in-interest to DECEDENT and seek both survival and wrongful death damages.

87. Plaintiffs also seek statutory attorney fees under this claim.

## <u>FIFTH CLAIM FOR RELIEF</u>

**Municipal Liability – Failure to Train (42 U.S.C. § 1983/ *Monell*)**

**(By Plaintiffs R.T. and A.T. against Defendants CITY and DOE SUPERVISORS)**

88. Plaintiffs reallege and incorporate by reference each preceding paragraph of this Complaint as though fully set forth herein.

89. The training policies of Defendants CITY and DOE SUPERVISORS were not adequate to train Richmond Police Department officers to properly handle the usual and recurring situations with which they must deal, including encounters with unarmed persons and persons experiencing mental health or medical crises, the assessment of the need to use force, the use of de-escalation techniques, and the use of deadly force.

90. Defendants CITY and DOE SUPERVISORS were deliberately indifferent to the obvious consequences of their failure to adequately train their officers, including the obvious consequence that inadequately trained officers would use excessive and unreasonable deadly force against persons such as DECEDENT.

91. The failure of Defendants CITY and DOE SUPERVISORS to adequately train Richmond Police Department officers, including Defendant HODGES and DOE OFFICERS, in proper police tactics, the proper assessment of the need to use force, de-escalation, effective communication, and the proper use of deadly force and proper detention and arrest procedures. POST was established by the California Legislature in 1959 to set minimum training standards for California peace officers. The training policies of CITY and DOE SUPERVISORS were not adequate to train its peace officers to handle the usual and recurring situations with residents that said Defendants have contact with.

92. The training policies of the CITY and DOE SUPERVISORS were deficient in the following ways:

a. The CITY and DOE SUPERVISORS failed to properly train CITY police officers, so that officers do not escalate their interactions with residents and do not overreact and resort to use of deadly force when the use of force was not necessary.

b. The CITY and DOE SUPERVISORS failed to properly train CITY police officers, so that Defendants do not permit fear to reach the point of becoming unreasonable fear, and not objectively reasonable, which

would result in the use of force to cause that would cause the death of residents, such as DECEDENT. This was a part of the CITY's negligent failure to train said Defendants to properly and adequately assess the need to use force against DECEDENT.

c. The CITY and DOE SUPERVISORS failed to properly train CITY failed to properly train CITY police officers, such as said Defendants, in proper police tactics, such as situational awareness so that police officers do not utilize negligent tactics, such as said Defendants herein. Because of this lack of proper training by the CITY, the Defendant HODGES, did not use proper police tactics in handling of the contact with DECEDENT, and instead used defective police tactics, including the lack of a situational awareness by the said Defendants. These defective tactics resulted in the death of DECEDENT.

d. The CITY and DOE SUPERVISORS failed to properly train its police officers, such as Defendants herein, would be trained in the importance of effective communication prior to using force.

e. Because of the lack of proper training by the CITY and DOE SUPERVISORS, said Defendants did not use effective communication prior to and during the use of force against DECEDENT. The ineffective communication of information by said Defendants prior to, and during the incident, resulted in the death of DECEDENT.

93. The failure of Defendant CITY and DOE SUPERVISORS to provide adequate training caused the deprivation of DECEDENT's and Plaintiffs' rights by said Defendants; that is, Defendant CITY's and DOE SUPERVISORS' failure to train is so closely related to the deprivation of the DECEDENT's and Plaintiffs' rights as to be the moving force that caused the ultimate injury.

94. By failing to provide adequate training to CITY police officers, including HODGES and DOE OFFICERS, CITY and DOE SUPERVISORS acted with an

intentional, reckless, and callous disregard for the life of DECEDENT's and DECEDENT's and Plaintiffs' constitutional rights. Defendants HODGES and DOES 1-10, each of their actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

95. By reason of the aforementioned acts and omissions, Plaintiffs suffered the injuries and damages alleged herein, including the loss of the love, companionship, comfort, care, society, and support of DECEDENT, and funeral and burial expenses.

96. Accordingly, Defendants CITY and DOE SUPERVISORS are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

97. Plaintiffs R.T. and A.T. bring this claim both individually and as successors-in-interest to DECEDENT and seek both survival and wrongful death damages.

98. Plaintiffs also seek statutory attorney fees under this claim.

## SIXTH CLAIM FOR RELIEF

**Supervisor Liability – 42 U.S.C. § 1983**

**(By Plaintiffs R.T. and A.T. against Defendants DOE SUPERVISORS)**

99. Plaintiffs repeat and re-allege each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as though fully set forth herein.

100. At all relevant times, DOE SUPERVISORS were managers, supervisors, administrators, and/or policymaking officials within the CITY's Police Department who acted under color of state law. Upon information and belief, these Defendants exercised responsibility for the training, supervision, discipline, and control of HODGES and/or DOE OFFICERS, including responsibility for the use-of-force, crisis-response, and emergency-medical-aid practices applicable to those officers.

101. Plaintiffs bring this claim against DOE SUPERVISORS in their

individual capacities for their own culpable acts and omissions that caused or contributed to the violations of DECEDENT's constitutional rights. Plaintiffs do not seek to impose liability merely because these Defendants held supervisory positions.

102. Upon information and belief, before this incident, DOE SUPERVISORS responsible for the deficiencies alleged below knew of a substantial risk that officers under their supervision would use unconstitutional deadly force, inadequately respond to persons experiencing apparent mental-health or medical crises, and/or fail to obtain timely medical assistance for persons injured during police encounters.

103. Despite that notice, and having authority and a reasonable opportunity to take corrective action, the responsible DOE SUPERVISORS failed to correct the following practices within their respective areas of responsibility:

a. Using deadly force without adequately assessing whether the person presented an immediate threat of death or serious bodily injury;
b. Escalating encounters with persons experiencing apparent mental health or medical crises without reasonably considering available time, distance, cover, communication, and requests for assistance;
c. Failing to provide meaningful commands and warnings before using deadly force when feasible;
d. Failing to adequately supervise or correct officers whose conduct demonstrated deficiencies in threat assessment, de-escalation, or the use of deadly force; and
e. Failing to ensure that officers promptly and reasonably render or summon necessary medical assistance for persons suffering obvious, life-threatening injuries following a use of force.

104. Upon information and belief, DOE SUPERVISORS were responsible for officer training and, despite the notice described above, failed to provide, implement, or enforce adequate training concerning:

a. The constitutional limitations on the use of deadly force;

b. Assessment of whether a person poses an immediate threat of death or serious bodily injury;

c. Recognition of and appropriate responses to apparent mental health and medical crises;

d. De-escalation, tactical planning, and the reasonable use of time, distance, and cover;

e. Meaningful commands and warnings before the use of deadly force when feasible; and

f. Promptly rendering or summoning necessary medical assistance after a shooting, including avoiding unreasonable delay or interference with emergency medical care.

105. The acts and omissions of each responsible DOE SUPERVISOR were not merely negligent. Despite knowledge of the particular risks described above, these Defendants consciously failed to take reasonable corrective measures within their authority, demonstrating deliberate indifference to the constitutional rights of persons encountered by officers under their supervision, including DECEDENT.

106. Each of DOE SUPERVISORS' conduct was causally connected to the resulting constitutional deprivation. These failures were an actual and proximate cause of DECEDENT's injuries and death.

107. As a direct and proximate result of these constitutional violations, DECEDENT suffered physical injuries, extreme pre-death physical and emotional pain and suffering, and loss of life. Plaintiffs R.T. and A.T., as successors-in-interest to DECEDENT, seek all recoverable compensatory damages under 42 U.S.C. § 1983, according to proof.

108. Plaintiffs seek punitive damages against each DOE SUPERVISOR whose conduct was motivated by evil motive or intent or involved reckless or callous indifference to DECEDENT's federally protected rights.

109. Plaintiffs seek reasonable attorney's fees and costs pursuant to 42 U.S.C.

§ 1988 and all other relief the Court deems just and proper.

**SEVENTH CLAIM FOR RELIEF**

**Battery (Cal. Gov. Code § 820 and California Common Law)**

**(Wrongful Death)**

**(By Plaintiffs R.T. and A.T. against Defendants HODGES, DOE OFFICERS, and CITY)**

110. Plaintiffs reallege and incorporate by reference each preceding paragraph of this Complaint as though fully set forth herein.

111. Under Penal Code § 835a, a peace officer may use deadly force in defense of human life. A law enforcement officer may use deadly force only when the officer reasonably believes, based on the totality of the circumstances, that such force is necessary, either to defend against an imminent threat of death or serious bodily injury to the officer or another person or to apprehend a fleeing person for a felony that threatened or resulted in death or seriously bodily injury.

112. Defendant HODGES, while acting within the course and scope of his employment as a peace officer for the CITY, intentionally shot DECEDENT multiple times. Defendant HODGES had no legal justification for using deadly force against DECEDENT, and his use of force was objectively unreasonable, especially because DECEDENT was not armed with a firearm and did not pose an immediate threat of death or serious bodily injury to any person, and because less-lethal alternatives were readily available.

113. Defendant CITY is vicariously liable for the wrongful acts of Defendants HODGES and DOE OFFICERS pursuant to California Government Code § 815.2(a) because, at all relevant times, Defendant HODGES and DOE OFFICERS acted within the course and scope of their employment with the CITY and authority as peace officers, including but not limited to HODGES responding to the scene in a police vehicle with its emergency lights activated. HODGES' actions were performed while

HODGES was acting, purporting to act, or pretending to act in the performance of his official duties as a police officer for the CITY. When HODGES shot DECEDENT, he was engaged in work that the CITY employed him to perform. Further, HODGES' conduct was incident to his duties as a police officer and was performed for the benefit of the CITY as opposed to serving his own purposes or convenience. Additionally, HODGES' pretense of acting in the performance of his official duties, including announcing himself as a police officer, had the purpose and effect of influencing the behavior of DECEDENT and other motorists. On information and belief, the gun and ammunition HODGES used to shoot DECEDENT was issued by the CITY.

114. The conduct of Defendant HODGES and DOE OFFICERS was malicious, wanton, oppressive, and undertaken with a conscious disregard for the rights of DECEDENT and Plaintiffs, entitling Plaintiffs, individually and as successors-in-interest to DECEDENT, to an award of exemplary and punitive damages as to HODGES and DOE OFFICERS.

115. As a direct and proximate result of the conduct of Defendant HODGES and DOE OFFICERS, Plaintiffs suffered the injuries and damages alleged herein, including the loss of the love, companionship, comfort, care, society, and support of DECEDENT, and funeral and burial expenses.

116. Plaintiffs R.T. and A.T. bring this claim both individually and as successors-in-interest to DECEDENT and seek wrongful death damages on this claim. *See* California Code of Civil Procedure § 377.34.

## EIGHT CLAIM FOR RELIEF

**Negligence (Cal. Gov. Code § 820 and California Common Law)**

**(Wrongful Death)**

**(By Plaintiffs R.T. and A.T. against all Defendants)**

117. Plaintiffs reallege and incorporate by reference each preceding paragraph of this Complaint as though fully set forth herein.

118. Defendants owed DECEDENT a duty to use reasonable care, including in the use of force and the provision of medical care. The actions and inactions of Defendants were negligent and a breach of that duty, including but not limited to:

a. The negligent tactics and handling of the encounter with DECEDENT, including pre-shooting negligence;
b. The failure to properly and adequately assess the need to use force, including deadly force, against DECEDENT;
c. The negligent use of force, including deadly force, against DECEDENT;
d. The failure to give a verbal warning or meaningful commands prior to using deadly force;
e. The failure to employ de-escalation techniques and readily available less-lethal alternatives;
f. The failure to provide and/or summon prompt and reasonable medical care to DECEDENT; and
g. The negligent hiring, training, retention, supervision, and discipline of Richmond Police Department officers, including Defendant HODGES and DOE OFFICERS

119. As a direct and proximate result of Defendants' negligence, DECEDENT suffered extreme physical and emotional pain and suffering, the loss of his life, and the loss of his future earning capacity; and Plaintiffs suffered the injuries and damages alleged herein, including the loss of the love, companionship, comfort, care, society, and support of DECEDENT, and funeral and burial expenses.

120. Defendant CITY is vicariously liable for the wrongful acts of Defendants HODGES and DOE OFFICERS pursuant to California Government Code § 815.2(a). At all relevant times, HODGES and DOE OFFICERS acted within the course and scope of their employment with the CITY and authority as peace officers. Defendant HODGES exercised his police authority by responding to the scene in a police vehicle with its emergency lights activated. DOE OFFICERS were on duty and acting within

the course and scope of their employment with the CITY. When HODGES fired the shots, he was acting in his official capacity, and he was using his CITY police training on the use of force, detentions, and arrests. HODGES' actions were performed while HODGES was acting, purporting to act, or pretending to act in the performance of his official duties as a police officer for the CITY. When HODGES shot DECEDENT, he was engaged in work that the CITY employed him to perform. Further, HODGES' conduct was incident to his duties as a police officer and was performed for the benefit of the CITY as opposed to serving his own purposes or convenience. Additionally, HODGES' pretense of acting in the performance of his official duties, including announcing himself as a police officer, had the purpose and effect of influencing the behavior of DECEDENT and other motorists. On information and belief, the gun and ammunition HODGES used to shoot DECEDENT was issued by the CITY.

121. Plaintiffs R.T. and A.T. bring this claim individually and as successors-in-interest to Decedent and seek wrongful death damages, including pursuant to California Code of Civil Procedure § 377.34.

## <u>NINTH CLAIM FOR RELIEF</u>

**Violation of the Bane Act (Cal. Civil Code § 52.1)**

**(By Plaintiffs R.T. and A.T. against Defendants HODGES, DOE OFFICERS, and CITY)**

122. Plaintiffs reallege and incorporate by reference each preceding paragraph of this Complaint as though fully set forth herein.

123. California Civil Code, Section 52.1 (the Bane Act), prohibits any person from interfering with another person's exercise or enjoyment of his constitutional rights by threats, intimidation, or coercion (or by the use of unconstitutionally excessive force).

124. When HODGES unnecessarily shot DECEDENT, unlawfully detained him, and denied and/or delayed his necessary medical attention after

being shot, he interfered with his civil rights to be free from unreasonable searches and seizures, due process, equal protection of the laws, medical care, and life, liberty, and property. HODGES intentionally used deadly force, demonstrating a reckless disregard for DECEDENT's right to be free from excessive force. HODGES acted with a specific intent to interfere with DECEDENT's constitutional rights, which is established by evidence showing that HODGES acted with reckless disregard for DECEDENT's constitutional rights.

125. At all relevant times during this incident, HODGES was acting under color of state law and under color of his authority as a peace officer. When HODGES fired the shots, he was acting in his official capacity, and he was using his CITY police training on the use of force, detentions, and arrests. When HODGES shot DECEDENT, he exercised power possessed by virtue of state law and made possible only because HODGES was clothed with the authority of state law. HODGES was employed by the state and abused the position given to him by the state; thus, he acted under color of state law.

126. Plaintiffs are informed and believe that DECEDENT reasonably perceived the conduct of HODGES as violent and threatening, and that such conduct discouraged and ultimately eliminated his ability to exercise his constitutional rights.

127. As a result of HODGES' and DOE OFFICERS' conduct as described above, DECEDENT was caused to suffer extreme mental and physical pain and suffering and ultimately died and lost earning capacity.

128. The conduct of Defendant HODGES and DOE OFFICERS was a substantial factor in causing the harms, injuries, and damages to DECEDENT and Plaintiffs.

129. Defendant CITY is vicariously liable for the wrongful acts of Defendant HODGES pursuant to California Government Code § 815.2(a) because, at all relevant times, Defendant HODGES acted within the course and scope of his employment and

authority as a peace officer, including by responding to the scene in a police vehicle with its emergency lights activated. HODGES' actions were performed while HODGES was acting, purporting to act, or pretending to act in the performance of his official duties as a police officer for the CITY. When HODGES shot DECEDENT, he was engaged in work that the CITY employed him to perform. Further, HODGES' conduct was incident to his duties as a police officer and was performed for the benefit of the CITY as opposed to serving his own purposes or convenience. Additionally, HODGES' pretense of acting in the performance of his official duties, including announcing himself as a police officer, had the purpose and effect of influencing the behavior of DECEDENT and other motorists. On information and belief, the gun and ammunition HODGES used to shoot DECEDENT was issued by the CITY.

130. The conduct of Defendants HODGES and DOE OFFICERS was malicious, wanton, oppressive, and undertaken with a conscious disregard for the rights of DECEDENT, entitling Plaintiffs to an award of exemplary and punitive damages against HODGES and DOE OFFICERS.

131. Plaintiffs seek survival damages on this claim, including damages for DECEDENT's pre-death pain and suffering, loss of life, lost earning capacity, and loss of enjoyment of life, as successors-in-interest to DECEDENT. Plaintiffs also seek attorney fees under this claim pursuant to Civ. Code, § 52.1(h), including a multiplier.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs R.T. and A.T., minors, by and through their guardian *ad litem* Emma Morales, in each case individually and as a successor-in-interest to Luis Torres, deceased, and EMMA MORALES, request entry of judgment in their favor and against Defendants CITY, BRANDON HODGES, and DOES 1-10, inclusive, as follows:

a. For compensatory damages, including both survival (pre-death pain and suffering, loss of enjoyment of life, lost earning capacity, and loss of life) and wrongful death damages under federal and state law, in the amount to be proven at trial;

b. For other general damages in an amount according to proof at trial;

c. For other non-economic damages in an amount according to proof at trial;

d. For other special damages in an amount according to proof at trial;

e. For punitive damages against the individual defendants in an amount to be proven at trial;

f. Attorneys' fees pursuant to 42 U.S.C. § 1988;

g. Attorneys' fees and costs pursuant to Cal. Civ. Code § 52.1(h)

h. For interest;

i. For reasonable costs of this suit; and

j. For such further other relief as the Court may deem just, proper, and appropriate.

Dated: November 10, 2026

**CARRILLO LAW FIRM, LLP**

[signature]

Luis A. Carrillo, Esq.
Michael S. Carrillo, Esq.
Maria F. Garcia Baldizzone, Esq.

//

DATED: November 10, 2026

**LAW OFFICES OF DALE K. GALIPO**

*Dale K. Galipo*

Dale K. Galipo, Esq.
Renee V. Masongsong, Esq.

**DEMAND FOR JURY TRIAL**

COME NOW Plaintiffs, by and through their attorneys of record, request that the present matter be set for jury trial.

Dated: November 10, 2026

**CARRILLO LAW FIRM, LLP**

Luis A. Carrillo, Esq.
Michael S. Carrillo, Esq.
Maria F. Garcia Baldizzone, Esq.
*Attorney for Plaintiffs*

DATED: November 10, 2026

**LAW OFFICES OF DALE K. GALIPO**

*/s/ Dale K. Galipo*

Dale K. Galipo, Esq.
Renee V. Masongsong, Esq.
*Attorneys for Plaintiffs*